# UNITED STATES DISTRICT COURT

## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| EXTENET SYSTEMS, INC.,<br><br>      Plaintiff,<br><br>vs.<br><br>THE CITY OF CAMBRIDGE, MASSACHUSETTS,<br>CITY OF CAMBRIDGE POLE AND CONDUIT<br>COMMISSION, and ELIZABETH LINT,<br>NICOLE MURATI FERRER,<br>STEPHEN LENKAUSKAS, and,<br>TERRANCE JAMES SHEA, each in their official<br>capacity as members of the City of Cambridge Pole and<br>Conduit Commission,<br><br>      Defendants. | Civil Action No. _____ |

**COMPLAINT**
**FOR DECLARATORY AND INJUNCTIVE RELIEF**
**AND EXPEDITED REVIEW PURSUANT TO 47 U.S.C. § 332(c)(7)(B)(v)**

Plaintiff, ExteNet Systems, Inc. ("Plaintiff" or "ExteNet"), by its undersigned attorneys, for its Complaint against the City of Cambridge, Massachusetts ("Cambridge"), the City of Cambridge Pole and Conduit Commission ("CP&CC"), and Elizabeth Lint, Nicole Murati Ferrer, Stephen Lenkauskas, and, Terrance James Shea, each in their official capacity as members of the City of Cambridge Pole and Conduit Commission (collectively, the "City" or "Defendants"), respectfully alleges as follows and hereby petitions this Court to: conduct an expedited review of Defendants' denial of various applications submitted by ExteNet for access to the public rights-of-way, in violation of Federal law, and to grant injunctive and declaratory relief to ExteNet permitting access to the public rights-of-way.

1

## INTRODUCTION AND REGULATORY FRAMEWORK

1.      In 1996, Congress enacted the Telecommunications Act of 1996, No. 104-104, 110 Stat. 56 (1996), which amended the Communications Act of 1934, codified in 47 U.S.C. §151 et seq. (hereinafter, the "Act" or the "TCA") as a "pro-competitive, de-regulatory national policy framework designed to accelerate rapidly private sector deployment of advanced telecommunications and information technologies and services to all Americans . . . ."[1]

2.      Congress has declared that there is a need for wireless communication services, including "personal wireless services," as set forth in the Act, and the rules, regulations and orders of the Federal Communications Commission ("FCC") promulgated pursuant thereto.  In order to foster its pro-competitive, deregulatory national policy, Congress included provisions in the Act that encourage competition by restricting the regulation of the placement of personal wireless service facilities by State and local governments and instrumentalities thereof.

3.      Section 332(c)(7) of the Act imposes substantive and procedural limitations on State and local governments and instrumentalities thereof to ensure that the Act's pro-competitive goals are not frustrated and it expressly preempts any action or inaction by State or local governments or their agents that effectively prohibits the provision of wireless services.

4.      Section 332(c)(7) of the Act strikes a balance between "preserv[ing] the traditional authority of state and local governments to regulate the location, construction, and modification of

---

[1] The Act, S. Rep. 104-230, at 1 (Feb. 1, 1996) (Conf. Report).

105347\000031\3277282

wireless communications facilities like cell phone towers" and "reduc[ing] . . . the impediments imposed by local governments upon the installation of facilities for wireless communications."[2]

5. While Section 332(c)(7)(A) of the Act preserves "the authority of a State or local government or instrumentality thereof over decisions regarding the placement, construction, and modification of personal wireless service facilities," that authority is subject to significant limitations.

6. Among the limitations placed on "State or local government(s) or instrumentalit(ies) thereof over decisions regarding the placement, construction, and modification of personal wireless service facilities" are that,

> The regulation of the placement, construction, and modification of personal wireless service facilities by any State or local government or instrumentality thereof—
>
> (I) shall not unreasonably discriminate among providers of functionally equivalent services; and
>
> (II) shall not prohibit or have the effect of prohibiting the provision of personal wireless services.[3]

7. Further, Section 332(c)(7)(B)(ii) of the Act, requires States and local governments or instrumentalities thereof to "act on any request for authorization to place, construct, or modify personal wireless service facilities within a reasonable period of time after the request is duly filed

---

[2] *T-Mobile S., LLC v. City of Roswell*, 574 U.S. __; 135 S. Ct. 808, 814; 190 L.Ed.2d 679 (2015); *City of Rancho Palos Verdes v. Abrams*, 544 U.S. 113, 115; 125 S. Ct. 1453, 161 L.Ed.2d 316, (2005).

[3] 47 U.S.C. § 332(c)(7)(B)(i).

with [the relevant] government or instrumentality, taking into account the nature and scope of such request."[4]

8.      The purpose of Section 332(c)(7)(B) of the Act is to counteract delays and unreasonable conditions in consideration of wireless facility siting applications by State or local governments or their agents, which thwart timely rollout and deployment of wireless service.

9.      Section 332(c)(7)(B)(v) of the Act provides that:

> any person adversely affected by any final action or failure to act by a State or local government or any instrumentality thereof that is inconsistent with this subparagraph may, within 30 days after such action or failure to act, commence an action in any court of competent jurisdiction. The court shall hear and decide such action on an expedited basis.

10.     As the federal agency tasked with implementing the Act, the FCC has the authority to promulgate rules and regulations to achieve the purposes of the Act.

11.     In its *Third Report and Order*[5], the FCC specifically stated that:

> a state or local legal requirement constitutes an effective prohibition if it "materially limits or inhibits the ability of any competitor or potential competitor to compete in a fair and balanced legal and regulatory environment." Our interpretation of that standard, as set forth above, applies equally to fees and to non-fee legal requirements. [6]

---

[4] 47 U.S.C. § 332(c)(7)(B)(ii).

[5] *In the Matter of Accelerating Wireless Broadband Deployment by Removing Barriers to Infrastructure Investment; Accelerating Wireline Broadband Deployment by Removing Barriers to Infrastructure Investment*, WT 17-29, WC 17-84, FCC 18-133, Sept. 26, 2018. ("*Third Report and Order*"). The *Third Report and Order* became effective as of January 14, 2019. 83 Fed. Reg. 51,867 (2018).

[6] *Id*. at ¶ 35, *citing, Petition of California Payphone,* 12 FCC Rcd 14911, 14206, ¶ 31 (1997) ("California Payphone").

105347\000031\3277282

12.     The FCC noted that among the purposes of the *Third Report and Order* was to:

- "clarify the particular standard that governs the fees and charges that violate Sections 253 and 332 [of the Act] when it comes to the Small Wireless Facilities at issue."[7];

- "address[] state and local consideration of aesthetic concerns in the deployment of Small Wireless Facilities, recognizing that certain reasonable aesthetic considerations do not run afoul of Sections 253 and 332."[8] and,

- "address[] the 'shot clocks" the "shot clocks" governing the review of wireless infrastructure deployments," and "create a new set of shot clocks tailored to support the deployment of Small Wireless Facilities."[9]

13.     In the *Third Report and Order, t*he FCC urged municipalities to adopt aesthetics standards, such as the Draft Policy within 180 days after the publication of the Third Report and Order in the Federal Register:

> We appreciate that at least some localities will require some time to establish and publish aesthetics standards that are consistent with this Declaratory Ruling. Based on our review and evaluation of commenters' concerns, we anticipate that such publication should take no longer than 180 days after publication of this decision in the Federal Register. [10]

14.     The *Third Report and Order* was published in the Federal Register on *October* 15, 2018 and became effective on January 14, 2019.[11]

15.     April 13, 2019 was the 180th day after publication of the *Third Report and Order* in the Federal Register.

---

[7] *Third Report and Order* at ¶ 11.

[8] *Id*. at ¶ 12.

[9] *Id*. at ¶ 13.

[10] *Id*. at ¶ 89.

[11] 83 Fed. Reg. 51,867 (2018)

16.     The FCC specifically directed that

> to establish that [such policies] are reasonable and reasonably
> directed to avoiding aesthetic harms, aesthetic requirements must be
> objective—i.e., they must incorporate clearly-defined and
> ascertainable standards, applied in a principled manner—and must
> be published in advance. "Secret" rules that require applicants to
> guess at what types of deployments will pass aesthetic muster
> substantially increase providers' costs without providing any public
> benefit or addressing any public harm. Providers cannot design or
> implement rational plans for deploying Small Wireless Facilities if
> they cannot predict in advance what aesthetic requirements they will
> be obligated to satisfy to obtain permission to deploy a facility at
> any given site. [12]

17.     As discussed below, the Defendants rejected various applications of ExteNet to construct personal wireless service facilities in the City's public rights-of-way solely because ExteNet was building the personal wireless service facilities and relying on third-parties to provide the communications and power to such.

18.     The Commission, discriminatorily, rejected the Applications on the basis that the City untimely and belatedly claimed the application was incomplete.

19.     The Commission, discriminatorily, rejected the Applications on the basis that the City requires multiple "companies to come before the Commission and present their respective plans; one cannot proceed without the other."[13]

---

[12] *Third Report and Order* at ¶ 88.

[13] City of Cambridge Pole and Conduit Commission, *Statement of Reasons for Denial of Petition Number 43891*, Jul. 30, 2019, p 3.  The same language appeared in the *Statement of Reasons for Denial of Petition Number 43925, Statement of Reasons for Denial of Petition Number 43971, Statement of Reasons for Denial of Petition Number 43979, and Statement of Reasons for Denial of Petition Number 43999.* (Collectively, "*Statements of Reasons for Denials*").

20.     As discussed below, the City's rejection of ExteNet's Applications and the City's policies constitutes illegal and unreasonable discrimination among providers of functionally equivalent services.

21.     As discussed below, the City's rejection of ExteNet's Applications and the City's policies constitute an illegal prohibition or has the effect of prohibiting the provision of personal wireless services.

## JURISDICTION AND VENUE

22.     This Court has subject matter jurisdiction over this action pursuant to: (a) 47 U.S.C. §§ 253 and 332(c)(7)(B) of the Act because ExteNet has been adversely affected and aggrieved by Defendants' actions in violation of those provisions of the Act; and (b) 28 U.S.C. § 1331 because this is a civil action that presents federal questions arising under the Act.

23.     This Court has jurisdiction to order declaratory and injunctive relief pursuant to 28 U.S.C. §§ 2201 and 2202 and has supplemental jurisdiction with regard to any state law claims pursuant to 28 U.S.C. § 1367.

24.     This Court has personal jurisdiction over the Defendants, and venue is proper in this Court, as the Defendants conduct or have conducted continuous, systematic, and routine business within the County of Middlesex in the State of Massachusetts and within the jurisdiction of this Court, pursuant to 28 U.S.C. § 101.

25.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) in that a substantial part of the events or omissions giving rise to this action occurred in the District of Massachusetts.

## EXPEDITED PROCEEDING

26.     Pursuant to 47 U.S.C. § 332(c)(7)(B)(v) of the Act, this Court "shall hear and decide [this] action on an expedited basis."

## THE PARTIES

27.     ExteNet is a Delaware corporation and maintains its principal place of business at 3030 Warrenville Road, Suite 340, Lisle, Illinois 60532-3633, in the County of DuPage, Illinois.

28.     ExteNet provides wholesale, facilities-based telecommunications services and holds certificates to provide such services in 45 states and the District of Columbia.

29.     ExteNet, through its predecessor in interest, ClearLinx Network Corporation, is registered with the Massachusetts Department of Telecommunications and Cable to provide intrastate telecommunications services in Massachusetts.

30.     ExteNet builds, owns, and operates wholesale, neutral-host distributed network facilities that improve the coverage and capacity of existing and new wireless networks.

31.     ExteNet's distributed network facilities consist of: (a) fiber optic cable; and (b) small antennas and supporting equipment that are either attached to utility poles and other structures in the public rights-of-way or suspended on cables strung between utility poles or wireless support structures.

32.     Wireless service providers — such as Verizon Wireless, AT&T, Sprint, and T-Mobile — pay ExteNet to use its distributed network facilities to assist them in providing wireless telecommunications services to retail consumers.

105347\000031\3277282

33.     Defendant, City of Cambridge, Massachusetts is a municipal corporation duly organized under the laws of the State of Massachusetts with a principal place of business at 795 Massachusetts Avenue, Cambridge, Massachusetts, 02139, in the County of Middlesex.

34.     Defendant, the City of Cambridge Pole and Conduit Commission, is an agency of Defendant City of Cambridge, Massachusetts with authority delegated by Chapter 15.16 of the Cambridge Municipal Code and pursuant to MASS. GEN. LAWS ch. 166 §22 and maintains its principal place of business at 831 Massachusetts Avenue, Cambridge, Massachusetts, 02139, in the County of Middlesex.

35.     Defendant Elizabeth Lint, named in her official capacity and not as an individual, is Executive Director of Defendant City of Cambridge Pole and Conduit Commission and maintains her principal place of business at 831 Massachusetts Avenue, Cambridge, Massachusetts, 02139, in the County of Middlesex.

36.     Defendant Nicole Murati Ferrer, named in her official capacity and not as an individual, is a member of and Chairperson of Defendant City of Cambridge Pole and Conduit Commission and maintains her principal place of business at 831 Massachusetts Avenue, Cambridge, Massachusetts, 02139, in the County of Middlesex.

37.     Defendant Stephen Lenkauskas, named in his official capacity and not as an individual, is City Electrician for Defendant City of Cambridge and a member of Defendant City of Cambridge Pole and Conduit Commission and maintains his principal place of business at 831 Massachusetts Avenue, Cambridge, Massachusetts, 02139, in the County of Middlesex.

38.     Defendant Terrance James Shea, named in his official capacity and not as an individual, is Superintendent of Streets for Defendant City of Cambridge and a member of

9

Defendant City of Cambridge Pole and Conduit Commission and maintains his principal place of business at 831 Massachusetts Avenue, Cambridge, Massachusetts, 02139, in the County of Middlesex.

## FACTS COMMON TO ALL COUNTS

39.     On April 3 and 4, 2019, ExteNet proffered Applications to the City for permits to allow for the construction of five (5) personal wireless service facility nodes on replacement City owned street light poles (collocation) in the public rights-of-way located in the City.

40.     An application for the following personal wireless service facility node was proffered to the City on April 3, 2019:

- ExteNet Node ID No. CRAN-RCTB-0009_14
  City of Cambridge Application No.  43891
  Located at 1341 Massachusetts Avenue (11 Quincy Street)
  42.37301870° N, 71.11500464°W
  Installation of a small cell wireless facility on a replacement city street light pole, including an antenna in a cylindrical shroud at the top of the pole, three radios in a shroud enclosure 12' above the ground. The replacement structure is designed to accommodate existing attachments and the proposed small cell facility

41.     Application for the following personal wireless service facility nodes were proffered to the City on April 4, 2019:

- ExteNet Node ID No. CRAN-RCTB-0009_08
  City of Cambridge Application VP 43925
  Located at 1341 Massachusetts Avenue
  42.37479304° N, 71.11854349°W
  Installation of a small cell wireless facility on a replacement city street light pole, including an antenna at the top of the pole, and one radio in a shroud 12' above the ground. The replacement structure is designed to accommodate existing attachments and the proposed small cell facility.

- ExteNet Node ID No. CRAN-RCTB-0009_01
  City of Cambridge Application VP 43971
  Located adjacent to 1607-1611Massachusetts Avenue
  42.38006670° N, 71.11977585°W
  Right-of-way adjacent to 1607-1611 Massachusetts Avenue - Installation of a
  small cell wireless facility on a replacement city street light pole, including an
  antenna in a cylindrical shroud at the top of the pole and three radios in a shroud
  12' above the ground. The replacement structure is designed to accommodate
  existing attachments and the proposed small cell facility.

- ExteNet Node ID No. CRAN-RCTB-00009_03
  City of Cambridge Application VP 43979
  Located at 1651 Massachusetts Avenue
  42.38161517° N, 71.11961488°W
  1651 Massachusetts Avenue - Installation of a small cell wireless facility on a
  replacement city street light pole, including an antenna in a cylindrical shroud at
  the top of the pole and three radios in a shroud 12' above the ground. The
  replacement structure is designed to accommodate existing attachments and the
  proposed small cell facility.

- ExteNet Node ID No. CRAN-RCTB-00009_06
  City of Cambridge Application VP 43999
  Located adjacent to 1972 Massachusetts Avenue
  42.39007052° N, 71.12090629°W
  Installation of a small cell wireless facility on a replacement city street light pole,
  including an antenna in a cylindrical shroud at the top of the pole and three radios
  in a shroud enclosure 12' above the ground. The replacement structure is designed
  to accommodate existing attachments and the proposed small cell facility.

42. ExteNet is under contract with AT&T to build the small cell wireless facilities listed

above for AT&T.

43. AT&T, which was not a party to ExteNet's Applications to the City, will make its

own arrangements for providing power to the small cell wireless facilities that AT&T has

contracted ExteNet to build.

44. AT&T, which was not a party to ExteNet's Applications to the City, will make its

own arrangements for providing fiber and data to the small cell wireless facilities that AT&T has

contracted ExteNet to build.

45.     According to the FCC's *Third Report and Order*, the proffering by ExteNet of Applications with the City, started the formal application process and the "FCC Shot Clock" on each of the Applications.

46.     Each of the Applications is for installation of personal wireless service facilities on a replacement city street light pole, which under the Shot Clock Order, constitute "collocation."[14]

47.     In the applications, ExteNet specified that "electric service will be provided from the nearest electrical manhole via underground handhole.  Fiber optic cable will be provided from the nearest telecom manhole via a new handhole."

48.     The FCC has specifically stated that "[c]onsidering this evidence as a whole, a review period of 30 days gives State and local governments sufficient time for reviewing applications for completeness, while protecting applicants from a last minute decision that applications should be denied as incomplete."[15]

49.     In the *Third Report and Order,* the FCC considered whether or not to change how municipalities review applications for "completeness:"

> In the *2014 Wireless Infrastructure Order*, the Commission clarified, among other things, that a shot clock begins to run when an application is first submitted, not when the application is deemed complete. The clock can be paused, however, if the locality notifies the applicant within 30 days that the application is incomplete.[16]

---

[14] 47 C.F.R. § 1.6002(g).

[15] *In Re Petition for Declaratory Ruling to Clarify Provisions of Section 332(c)(7)(B) to Ensure Timely Siting Review and to Preempt Under Section 253 State and Local Ordinances that Classify All Wireless Siting Proposals as Requiring a Variance*, WT 08-165, FCC 09-99, ¶53   (Nov  18, 2009) ("*2009 Declaratory Ruling*"), *aff'd, City of Arlington v. FCC*, 668 F.3d 229 (5th Cir. 2012), *aff'd,* 569 U.S. 290 (2013).

[16] *Third Report and Order,* ¶141.

50.     The FCC Codified this condition at 47 C.F.R. 1.6003(d)(2):

(2)     For all other initial applications, the tolling period shall be the number of days from -

(i)     The day after the date when the siting authority notifies the applicant in writing that the application is materially incomplete and clearly and specifically identifies the missing documents or information that the applicant must submit to render the application complete and the specific rule or regulation creating this obligation; until

(ii)    The date when the applicant submits all the documents and information identified by the siting authority to render the application complete;

(iii)   But only if the notice pursuant to paragraph (d)(2)(i) of this section is effectuated on or before the 30th day after the date when the application was submitted;

51.     Pursuant to 47 C.F.R. 1.6003(d)(2), the Defendants had 30 days in which to identify any deficiencies in the Applications and to notify ExteNet of such deficiencies.

52.     The Defendants did not request any additional information from ExteNet regarding the Applications within 30 days.

53.     Because the Defendants did not ask for additional information within 30 days, the Applications were deemed complete.

54.     Pursuant to 47 C.F.R. § 1.6003, Defendants had 60 days from the date of submission of the Applications to approve or reject the Applications and, if approved, issue any necessary Permits to ExteNet.

55.     Based on the submission date of the Applications on April 3 and 4, 2019, the "reasonable period of time" under the Act for Defendants to act on the Applications was 60 days, since the Applications are for collocation.

13

56.     The 60-day "FCC Shot Clock" for the Applications submitted on April 3 and 4, 2019 should have expired on June 3, 2019.[17]

57.     On May 16, 2019, the Defendants noticed ExteNet's Application for hearing before the Pole and Conduit Commission.

58.     The Defendants also noticed a discussion of a "Policy Regarding Small Cell Wireless Installations on Public Ways" for hearing before the Cambridge Pole and Conduit Commission on May 16, 2019.

59.     On or about May 16, 2019, the Defendants issued a draft "Policy Regarding Small Cell Wireless Installations on Public Ways."

60.     At the hearing on May 16, 2019, the Defendants indicated that unless ExteNet agreed to a "tolling agreement" to give the Defendants additional time to develop their "Policy Regarding Small Cell Wireless Installations on Public Ways," they would have to reject ExteNet's Applications.

61.     ExteNet agreed, in writing, to toll the "shot clock" giving Defendants until July 30, 2019 to make a determination on ExteNet's Applications.

62.     On May 29, 2019, ExteNet provided the Defendants with extensive written comments on their draft "Policy Regarding Small Cell Wireless Installations on Public Ways."

63.     In ExteNet's May 29, 2019 Comments, ExteNet pointed out ways that the "Policy Regarding Small Cell Wireless Installations on Public Ways" did not comply with standards set forth and established by the FCC in the *Third Report and Order.*

---

[17] The April 3 shot clock expired on Sunday, June 2, 2019 and would have been moved to Monday, June 3, 2019.

64.     In ExteNet's May 29, 2019 Comments, ExteNet pointed out ways that the "Policy Regarding Small Cell Wireless Installations on Public Ways" would require companies building personal wireless systems in the Defendant City to comply with unreasonably burdensome requirements.

65.     In ExteNet's May 29, 2019 Comments, ExteNet pointed out ways that the "Policy Regarding Small Cell Wireless Installations on Public Ways," required companies building personal wireless systems in the Defendant City to potentially violate federal Anti-trust regulations.

66.     In ExteNet's May 29, 2019 Comments, ExteNet pointed out ways that the "Policy Regarding Small Cell Wireless Installations on Public Ways" is impermissibly discriminatory against providers of personal wireless systems because such requirements are not placed on other types of communications providers.

67.     In ExteNet's May 29, 2019 Comments ExteNet highlighted ways the City's "Policy Regarding Small Cell Wireless Installations on Public Ways" would effectively prohibit the deployment of personal wireless systems and or discriminating against companies seeking to deploy small cells in the public right of way, including:

    a.  The requirement that competitors be notified *before* the Application is filed;

    b.  The provision that if an application remains incomplete thirty (30) days after its submission, the Application will be considered withdrawn and will have to be resubmitted;

    c.  Requiring proof of service by constable, if notice of Application and hearing by certified mail cannot be proven to have be delivered;

    d.  Provisions that are vague and or leave factors to be "determined by the Commission chair in his or her sole discretion;"

e. Granting the Pole and Conduit Commission authority to disapprove an application if "there are more convenient or favorable nearby locations such that the applicant may densify its network through such nearby locations."

f. Requiring "detailed map in a digital format acceptable to the Commission showing the Applicant's existing and proposed Installation(s) within 500 feet of the Application site and amount of cellular coverage in the area, including the amount of cellular coverage in such area, and evidence that the proposed Installation is needed to prevent a material inhibition of wireless services;"

g. Requiring an "affidavit from a Radio Frequency Engineer outlining the network/network service requirements in the City and how the Installation(s) address that need in the City. Such affidavit shall characterize the current level of coverage and how the desired Installation(s) will change the current level of coverage, through or with coverage maps, including current and proposed coverage, including a breakdown of "excellent" "good and "poor" reception area, and any further evidence showing that the lack of the Installation would materially inhibit wireless services;"

h. Requiring "documentation showing Applicant is in good standing and currently licensed by the Federal Communications Commission, and the proposed Installation shall comply with any regulations of the Federal Communications Commission; and,

i. Requiring that, "where the City has planned a redevelopment or change to a street, sidewalk, square, or other area of the City, Applicants shall remove their Installation at their own cost within 60 days of notice by the City, and may apply to re-install their Installation in a different location upon the City's redevelopment or change to such area."

68. At the June 10, 2019 meeting an Interim Policy Regarding Small Cell Wireless Installations on Public Ways was circulated for the first time.

69. On June 10, 2019, the Defendants met and heard oral comments regarding the draft "Policy Regarding Small Cell Wireless Installations on Public Ways."

70. On June 10, 2019, the Defendants adopted the Interim Policy Regarding Small Cell Wireless Installations on Public Ways without any changes recommended orally at the hearing.

105347\000031\3277282

71.     The Defendants' June 10, 2019 adoption of an Interim Policy Regarding Small Cell Wireless Installations on Public Ways was made 58 days after the FCC's deadline for adopting such policies.

72.     In the *Third Report and Order,* the FCC urged municipalities to adopt aesthetics standards, such as the Draft Policy within 180 days after the publication of the *Third Report and Order* in the Federal Register.[18]

73.     The *Third Report and Order* was published in the Federal Register on *October* 15, 2018 and became effective on January 14, 2019.[19]

74.     April 13, 2019 was the 180th day after publication of the *Third Report and Order* in the Federal Register.

75.     The FCC specifically directed that policies such as the Defendants' Policy Regarding Small Cell Wireless Installations on Public Ways should be,

> reasonable and reasonably directed to avoiding aesthetic harms, aesthetic requirements must be objective—i.e., they must incorporate clearly-defined and ascertainable standards, applied in a principled manner—and must be published in advance. "Secret" rules that require applicants to guess at what types of deployments will pass aesthetic muster substantially increase providers' costs without providing any public benefit or addressing any public harm. Providers cannot design or implement rational plans for deploying Small Wireless Facilities if they cannot predict in advance what aesthetic requirements they will be obligated to satisfy to obtain permission to deploy a facility at any given site. [20]

---

[18] *Third Report and Order* at ¶ 89.

[19] 83 Fed. Reg. 51,867 (2018)

[20] *Third Report and Order* at ¶ 88.

76.     The Defendants' Policy Regarding Small Cell Wireless Installations on Public Ways does not "incorporate clearly-defined and ascertainable standards, applied in a principled manner."

77.     The Interim Policy Regarding Small Cell Wireless Installations on Public Ways does not comply with standards set forth and established by the FCC in the *Third Report and Order*.

78.     The Interim Policy Regarding Small Cell Wireless Installations on Public Ways requires companies building personal wireless systems in the Defendant City to comply with unreasonably burdensome requirements.

79.     The Interim Policy Regarding Small Cell Wireless Installations on Public Ways, requires companies building personal wireless systems in the Defendant City to potentially violate federal Anti-trust regulations.

80.     The Interim Policy Regarding Small Cell Wireless Installations on Public Ways, impermissibly discriminates against providers of personal wireless systems because such requirements are not placed on other types of communications providers.

81.     The Defendants' pre-existing "Pole and Conduit Siting Policy Relating to Grants of Location for Telecommunications Services Networks" does not mention the placement of personal wireless service facilities.

82.     The Defendants' application of the pre-existing "Pole and Conduit Siting Policy Relating to Grants of Location for Telecommunications Services Networks" should be inapplicable to the placement of personal wireless service facilities.

83.     On July 25, 2019, the Defendant Pole and Conduit Commission met and considered ExteNet's Applications.

84.     The Defendants' hearing to consider ExteNet's Applications on July 25, 2019 was held 113 (for one application) and 112 days (for all other applications) after ExteNet filed its Applications.

85.     On July 25, 2019, for the first time, the Defendants raised the fact that the Applications did not specify how ExteNet intended to supply power to the proposed small cell wireless facilities.

86.     On July 25, 2019, for the first time, the Defendants raised the fact that the Applications did not specify how ExteNet intended to provide fiber/data to the proposed small cell wireless facilities.

87.     On July 30, 2019, the Defendants issued written denials of ExteNet's Applications.[21]

88.     In the July 30, 2019 *Statements of Reasons for Denials*, Defendants stated:

> the Commission considered the Petition and denied it for failure to comply with: (1) the Commission's requirements, including but not limited to, showing the manner in which the attachment would be powered and submitting a complete application with disclosure as to the related necessary conduit, see Cambridge Municipal Code 15.16.100; (2) the Siting Policy, including but not limited to, Sections 3-5 and 7; and (3) the Commission's Small Cell Policy, including but not limited to, Sections l(B), 1(1), and V(B)(iii).[22]

89.     47 U.S.C. § 332(c)(7)(B)(v) provides that,

---

[21] *Statements of Reasons for Denials.*

[22] *Id*. at p. 4.

19

> Any person adversely affected by any final action or failure to act by a State or local government or any instrumentality thereof that is inconsistent with this subparagraph may, within 30 days after such action or failure to act, commence an action in any court of competent jurisdiction. The court shall hear and decide such action on an expedited basis.

90.     Pursuant to 47 U.S.C. § 332(c)(7)(B)(v), this Action is timely filed within thirty

(30) days of the Defendants' July 30, 2019 written denials of ExteNet's Applications.

### COUNT I
**(Unreasonable Delay on Determining the Completeness of the Applications in Violation of 47 U.S.C. § 332(c)(7)(B)(ii) and various FCC Orders)**

91.     ExteNet repeats and re-alleges each and every paragraph stated above and

incorporates those paragraphs by reference, as though fully stated here.

92.     47 U.S.C. § 332(c)(7)(B)(ii) provides that, "[a] State or local government or

instrumentality thereof shall act on any request for authorization to place, construct, or modify

personal wireless service facilities within a reasonable period of time after the request is duly filed

with such government or instrumentality, taking into account the nature and scope of such

request."

93.     The FCC has specifically stated that "[c]onsidering this evidence as a whole, a

review period of 30 days gives State and local governments sufficient time for reviewing

applications for completeness, while protecting applicants from a last minute decision that

applications should be denied as incomplete."[23]

---

[23] *2009 Declaratory Ruling*, ¶53.

94.     Upholding the *2009 Declaratory Ruling*, the United States Court of Appeals for the

Fifth Circuit stated:

> The FCC also recognized, however, that a state or local government that
> confronted an incomplete application, but delayed alerting the
> applicant to the deficiencies in the application, should be presumed
> to have acted unreasonably if the government ultimately did not act
> on the application within the time frames. Thus, the FCC allowed
> for tolling of the . . . time frames in cases of incompleteness, but also
> imposed a separate time frame for state and local governments to
> notify applicants of incompleteness in order to prevent state and
> local governments from manipulating the process. This does not
> strike us as an unreasonable application of § 332(c)(7)(B)(ii).[24]

95.     The Applications submitted by ExteNet constitute a request for the placement of

personal wireless service facilities and, as such, ExteNet is entitled to the benefits and protections

of the Act, FCC Orders, and the FCC's Rules and Regulations with respect to the Applications.

96.     Based on information and belief, each of the Sites referenced in the Applications

are within the public rights-of-way owned or under the jurisdiction of the City.

97.     Pursuant to 47 C.F.R. § 1.6003(d), a determination of incompleteness of a siting

application tolls the shot clock only if the State or local government or instrumentality thereof

provides notice to the applicant in writing within 30 days of the submission of the application,

specifically identifying all missing information, and specifying any code provision, ordinance,

application instruction, or otherwise publicly-stated procedures that require the information to be

submitted.

98.     If the State or local government or instrumentality thereof does not respond in

writing within the first 30 days of submission of a siting application, and fails to specifically

---

[24] *City of Arlington v. FCC*, 668 F.3d 229, 257-258 (5th Cir. 2012), *aff'd,* 569 U.S. 290 (2013).

identify what, if any, information is missing, and later claims the Application was incomplete the reviewing municipality "should be presumed to have acted unreasonably."[25]

99.     Pursuant to 47 C.F.R. 1.6003(d)(2), the Defendants had 30 days in which to identify any deficiencies in the Applications and to notify ExteNet of such deficiencies.

100.    The Defendants did not request any additional information from ExteNet regarding the Applications within 30 days.

101.    Because the Defendants did not ask for additional information within 30 days, the Applications were deemed complete.

102.    On July 25, 2019, 113 (or 112) days after ExteNet filed its Applications, for the first time, the Defendants raised the fact that the Applications did not specify how ExteNet intended to supply power to the proposed small cell wireless facilities.

103.    On July 25, 2019, 113 (or 112) days after ExteNet filed its Applications, for the first time, the Defendants raised the fact that the Applications did not specify how ExteNet intended to fiber/data to the proposed small cell wireless facilities.

104.    On July 30, 2019, the Defendants issued written denials of ExteNet's Applications and stated that:

> the Commission considered the Petition and denied it for failure to comply with: (1) the Commission's requirements, including but not limited to, showing the manner in which the attachment would be powered and submitting a complete application with disclosure as to the related necessary conduit, see Cambridge Municipal Code 15.16.100; (2) the Siting Policy, including but not limited to,

---

[25] *Id*. at 258

Sections 3-5 and 7; and (3) the Commission's Small Cell Policy, including but not limited to, Sections l(B), 1(1), and V(B)(iii).[26]

105.    Because the Defendants first asserted that the Applications were not complete almost four months after filing, the Defendants "should be presumed to have acted unreasonably."[27]

106.    Because the Defendants failed to notify ExteNet within 30 days that the Defendants considered the Applications incomplete, the Defendants were barred by the doctrine of laches from denying the Applications on the basis that the Defendants considered the Applications incomplete.

107.    Because the Defendants failed to notify ExteNet within 30 days that the Defendants considered the Applications incomplete, the Defendants are estopped from denying the Applications on the bases that the Defendants considered the Applications incomplete.

108.    By its acts and omissions, Defendants have violated 47 U.S.C. § 332(c)(7)(B)(ii), as authoritatively interpreted by the FCC and codified in the Code of Federal Regulations.

109.    Under the circumstances, ExteNet is entitled to permanent injunctive relief through an order and judgment granting ExteNet's Applications and ordering that Defendants: 1) issue all necessary permits, and, 2) authorize ExteNet to immediately begin the necessary work to deploy its infrastructure in the public rights-of-way.

---

[26] *Statements of Reasons for Denials,* at 4.

[27] *City of Arlington v. FCC*, 668 F.3d at 258.

105347\000031\3277282

## COUNT II
### (Unlawful Prohibition on Provision of
### Personal Wireless Services in Violation of 47 U.S.C. § 332(c)(7)(B)(i)(II))

110.    ExteNet repeats and re-alleges each and every paragraph stated above and incorporates those paragraphs by reference, as though fully stated here.

111.    Section 332(c)(7)(B)(i)(II) of the Act provides that the "regulation of the placement, construction, and modification of personal wireless service facilities by any State or local government or instrumentality thereof . . . shall not prohibit or have the effect of prohibiting the provision of personal wireless services."

112.    Defendants' denial of ExteNet's Applications ignore ExteNet's independent Federal and State rights to install telecommunications equipment and personal wireless equipment in the public rights-of-way.

113.    Defendants denied ExteNet's Applications because, as stated in the *Statements of Reasons for Denials,*

> if two companies are involved in the attachment/wiring, the two companies are to come before the Commission and present their respective plans; one cannot proceed without the other. Regardless of whether ExteNet argues that it is not responsible for powering the attachment, it is incongruous to allow an attachment if it cannot be powered.[28]

114.    The Act defines the term "personal wireless services facilities" as "facilities for the provision of personal wireless services."[29]

---

[28] *Statements of Reasons for Denials,* at 4.

[29] 47 U.S.C. § 332(c)(7)(C)(ii).

115.    The Act defines the term "personal wireless services" as "commercial mobile services, unlicensed wireless services, and common carrier wireless exchange access services."[30]

116.    The Act does not include, in the definition of "personal wireless services facilities" the provision of power for such.

117.    ExteNet has a right, under the Act to install "personal wireless services facilities" in the public right of way, with or without power.

118.    Defendants' denial of ExteNet's Applications for installation of ExteNet's personal wireless systems without providing power to such "unreasonably discriminate[s] among providers of functionally equivalent services" by forcing companies to share what may be confidential information and proprietary plans in violation of 47 U.S.C. § 332(c)(7)(B)(i)(I).

119.    Defendants' denial of ExteNet's application unless ExteNet coordinates with other companies, for installation of ExteNet's personal wireless systems is "unreasonably discriminate[s] among providers of functionally equivalent services" by forcing companies to share what may be confidential information and proprietary plans in violation of 47 U.S.C. § 332(c)(7)(B)(i)(I).

120.    Defendants' denial of ExteNet's Applications for installation of ExteNet's personal wireless systems without providing power to such is "prohibit[s] or [has] the effect of prohibiting the provision of personal wireless services in violation of 47 U.S.C. § 332(c)(7)(B)(i)(II)

121.    Under the circumstances, ExteNet is entitled to permanent injunctive relief through an order and judgment granting ExteNet's Applications and ordering that Defendants: 1) issue all

---

[30] 47 U.S.C. § 332(c)(7)(C)(i).

necessary permits, and, 2) authorize ExteNet to immediately begin the necessary work to deploy its infrastructure in the public rights-of-way.

<u>**COUNT III**</u>
**(For Prohibition of Services and Bar to Entry in Violation of 47 U.S.C. § 253(a))**

122.     ExteNet repeats and re-alleges each and every paragraph stated above and incorporates those paragraphs by reference, as though fully stated here.

123.     47 U.S.C. § 253(a) provides that "No State or local statute or regulation, or other State or local legal requirement, may prohibit or have the effect of prohibiting the ability of any entity to provide any interstate or intrastate telecommunications service."

124.     ExteNet has been attempting to exercise its right to access the public rights-of-way under exclusive control of the City to provide telecommunications services.

125.     Defendants have unreasonably denied ExteNet's Applications seeking authorization to install personal wireless service facilities in the public rights-of-way under the jurisdiction of the City.

126.     Defendants' requirement that ExteNet provide information not in its possession has the "the effect of prohibiting the ability of [ExteNet] to provide personal wireless facilities and telecommunications services" in violation of 47 U.S.C. § 253(a).

127.     Defendants' requirement that ExteNet, coordinate with other entities that are not the subject of ExteNet's application has the "the effect of prohibiting the ability of [ExteNet] to provide personal wireless facilities and telecommunications services" in violation of 47 U.S.C. § 253(a).

128.     ExteNet has suffered and will continue to suffer irreparable harm as a result of Defendants' denial of Applications and the resulting delay of ExteNet's efforts to deploy its infrastructure within the public rights-of-way under the jurisdiction of Defendants.

129.     Under the circumstances, ExteNet is entitled to permanent injunctive relief through an order and judgment granting ExteNet's Applications and declaring that Defendant: 1) issue all necessary permits, 2) authorize ExteNet to immediately begin the necessary work to deploy its infrastructure in the public rights-of-way.

## COUNT IV
### (Violations of 47 U.S.C. § 253 – Preemption)

130.     ExteNet repeats and re-alleges each and every paragraph stated above and incorporates those paragraphs by reference, as though fully stated here.

131.     In the *Third Report and Order,* the FCC urged municipalities to adopt aesthetics standards, such as the Draft Policy within 180 days after the publication of the *Third Report and Order* in the Federal Register:

> We appreciate that at least some localities will require some time to establish and publish aesthetics standards that are consistent with this Declaratory Ruling. Based on our review and evaluation of commenters' concerns, we anticipate that such publication should take no longer than 180 days after publication of this decision in the Federal Register. [31]

132.     The FCC specifically directed that

> to establish that [such policies] are reasonable and reasonably directed to avoiding aesthetic harms, aesthetic requirements must be objective—i.e., they must incorporate clearly-defined and ascertainable standards, applied in a principled manner—and must be published in advance. "Secret" rules that require applicants to guess at what types of deployments will pass aesthetic muster

---

[31] *Id*. at ¶ 89.

substantially increase providers' costs without providing any public benefit or addressing any public harm. Providers cannot design or implement rational plans for deploying Small Wireless Facilities if they cannot predict in advance what aesthetic requirements they will be obligated to satisfy to obtain permission to deploy a facility at any given site. [32]

133.    On June 10, 2019, the Defendants adopted the Interim Policy Regarding Small Cell Wireless Installations on Public Ways without any changes recommended orally at the hearing.

134.    The Defendants' June 10, 2019 adoption of an Interim Policy Regarding Small Cell Wireless Installations on Public Ways was made 58 days after the FCC's deadline for adopting such policies.

135.    On its face, the Defendants' Policy Regarding Small Cell Wireless Installations on Public Ways is preempted because it discriminates against and effectively prohibits companies that are seeking access to public rights of way in the City of Cambridge for deployment of small cells by applying legal requirements that materially impact and place higher procedural and substantive burdens on such providers of wireless services in comparison to other providers of telecommunications services, which are not subject to the requirements of the Defendants' Policy Regarding Small Cell Wireless Installations on Public Ways.

136.    To the extent Defendants' Policy Regarding Small Cell Wireless Installations on Public Ways is not preempted in its entirety, multiple provisions of Defendants' Policy Regarding Small Cell Wireless Installations on Public Ways are preempted as effectively prohibiting and discriminating against companies seeking to deploy small cells in the public right of way, including:

---

[32] *Third Report and Order* at ¶ 88.

a. The requirement that competitors be notified *before* the Application is filed;

b. The provision that if an application remains incomplete thirty (30) days after its submission, the Application will be considered withdrawn and will have to be resubmitted;

c. Requiring proof of service by constable, if notice of Application and hearing by certified mail cannot be proven to have be delivered;

d. Provisions that are vague and or leave factors to be "determined by the Commission chair in his or her sole discretion;"

e. Granting the Pole and Conduit Commission authority to disapprove an application if "there are more convenient or favorable nearby locations such that the applicant may densify its network through such nearby locations."

f. Requiring "detailed map in a digital format acceptable to the Commission showing the Applicant's existing and proposed Installation(s) within 500 feet of the Application site and amount of cellular coverage in the area, including the amount of cellular coverage in such area, and evidence that the proposed Installation is needed to prevent a material inhibition of wireless services;"

g. Requiring an "affidavit from a Radio Frequency Engineer outlining the network/network service requirements in the City and how the Installation(s) address that need in the City. Such affidavit shall characterize the current level of coverage and how the desired Installation(s) will change the current level of coverage, through or with coverage maps, including current and proposed coverage, including a breakdown of "excellent" "good and "poor" reception area, and any further evidence showing that the lack of the Installation would materially inhibit wireless services;"

h. Requiring "documentation showing Applicant is in good standing and currently licensed by the Federal Communications Commission, and the proposed Installation shall comply with any regulations of the Federal Communications Commission; and,

i. Requiring that, "where the City has planned a redevelopment or change to a street, sidewalk, square, or other area of the City, Applicants shall remove their Installation at their own cost within 60 days of notice by the City, and may apply to re-install their Installation in a different location upon the City's redevelopment or change to such area."

137.   Defendants' Policy Regarding Small Cell Wireless Installations on Public Ways

vests the Cambridge Pole and Conduit Commission with powers that go beyond the limited scope

of managing the right of way and authorizes the Cambridge Pole and Conduit Commission to regulate the provision of telecommunications services.

138.    ExteNet is entitled to an order and judgment declaring Defendants' Policy Regarding Small Cell Wireless Installations on Public Ways preempted, in whole or in part, granting ExteNet's Amended Application and mandating that the Defendants issue all necessary permits and authorizations for ExteNet to begin necessary work to deploy its infrastructure in the public rights of way in the City of Cambridge.

## COUNT V
### (For Declaratory Relief and Permanent Injunction)

139.    ExteNet repeats and re-alleges each and every paragraph stated above and incorporates those paragraphs by reference, as though fully stated here.

140.    A present and actual controversy has arisen and now exists between the parties regarding their respective legal rights and duties.  ExteNet contends that the Defendants' actions and omissions are in violation of the Act, 47 C.F.R. § 1.6003 and various FCC Orders.

141.    ExteNet and the public have been and will continue to be adversely affected by the Defendants' actions and omissions.

142.    Accordingly, declaratory relief is appropriate and necessary to adjudicate the extent of ExteNet's rights and the Defendants' obligations and authority.

143.    As a result of Defendants' actions and omissions, ExteNet has been, and will continue to be, damaged and irreparably harmed absent the relief requested herein.

144.    The harm caused by the Defendants' actions and omissions includes, but is not limited to, an effective prohibition on ExteNet's ability to provide personal wireless services at the Sites, and unreasonable delay in taking final (and any) action on the Applications, all impairing

ExteNet's (a) ability to provide the public with reliable wireless telecommunications service; (b) ability to compete with other providers of telecommunications services; (c) full use of its existing FCC and Massachusetts telecommunications authorizations, and or licenses and business investments; and (d) good will and business reputation.

145.    ExteNet has a likelihood of success on the merits because it is entitled to access public rights-of-way under Federal law and there is no reasonable justification for Defendants' failure to act on ExteNet's Applications to install personal wireless service facilities on, or suspended adjacent to, existing utility poles in the public rights-of-way.

146.    The harm that ExteNet has suffered and continues to suffer from the Defendants' actions and omissions is not reasonably susceptible to accurate calculations and cannot be fully and adequately addressed through an award of damages.

147.    Given that the matter in dispute is Defendants' failure to issue permits and authorize ExteNet to install personal wireless service facilities on, or suspended adjacent to, existing utility poles in the public rights-of-way, ExteNet cannot be made completely whole by damages and has no other adequate remedy at law other than the Court ordering that the Applications be deemed granted or by the Court compelling Defendants to grant ExteNet's Applications.

148.    A balancing of the equities tips in ExteNet's favor in that it has proceeded throughout the application process in good faith and has submitted all requested forms and documents, while Defendants "should be presumed to have acted unreasonably."[33]

149.    Defendants have failed to act as required by Federal law.

---

[33] *Id.*

150.    In contrast to the immediate and irreparable injury being suffered by ExteNet, its customers, and the public interest, the Defendants will suffer no significant injury if the Court issues the requested injunction.

151.    As such, ExteNet is entitled to a judgment and order of permanent injunction compelling Defendants to issue permits and any other approvals required to allow ExteNet to install the personal wireless service facilities on, or suspended adjacent to, existing utility poles in the public rights-of-way that are the subject of this Action.

## PRAYER FOR RELIEF

**WHEREFORE**, ExteNet respectfully requests that, pursuant to 47 U.S.C. § 322(c)(7)(B)(v), the Court hear and decide this action on an expedited basis, and issue an Order and Judgment in its favor as follows:

a)      finding and declaring that Defendants' failure to timely notify ExteNet that ExteNet's Applications were considered incomplete by the Defendants within a reasonable time constitutes a violation of 47 U.S.C. § 332(c)(7)(B)(ii);

b)      finding and declaring that Defendants' failure to timely notify ExteNet that ExteNet's Applications were considered incomplete by the Defendants within a reasonable time, pursuant to 47 C.F.R §1.6003, amounts to an illegal and unreasonable delay in violation of 47 U.S.C. § 332(c)(7)(B)(ii);

c)      finding and declaring that Defendants' denial of ExteNet's Applications have prohibited or had the effect of prohibiting ExteNet from providing personal wireless services in violation of 47 U.S.C. § 253(a) and 47 U.S.C. § 332(c)(7)(B)(i)(II);

d)      finding and declaring that Defendants' denial of ExteNet's Applications constitutes unreasonable discrimination against ExteNet in the management of the public rights-of-way and in the provision of functionally equivalent personal wireless and telecommunications services in violation of 47 U.S.C. § 253(c) and 47 U.S.C. § 332(c)(7)(B)(i)(II);

e)      finding and declaring that Defendants' denial of ExteNet's Applications constituted illegal tortious interference with contract;

f)      finding and declaring that Defendants' Policy Regarding Small Cell Wireless Installations on Public Ways is preempted, in whole or in part, by Federal law and FCC Orders;

g)      granting the Applications and issuing an order mandating or an order requiring that Defendants immediately issue, pursuant to Federal law, all approvals, necessary permits and authorizations for ExteNet to immediately install small wireless service facilities, and associated infrastructure in the City controlled public-rights-of-way as set forth in the Applications;

h)      issuing an order invalidating, in whole or in part, the Defendants' Policy Regarding Small Cell Wireless Installations on Public Ways;

i)      awarding ExteNet its damages, reasonable attorneys' fees, costs, disbursements, and other expenses of this action as permitted by law; and

105347\000031\3277282

j)    granting such other and further relief as the Court deems just and proper.

Respectfully submitted,

EXTENET SYSTEMS, INC.

By its attorneys,


/s/ William A. Worth
William A. Worth, BBO #544086
wworth@princelobel.com
Michael A. Kippins, BBO #688613
mkippins@princelobel.com
PRINCE LOBEL TYE LLP
One International Place, Suite 3700
Boston, MA 02110
Telephone:  (617) 456-8000
Fax:  (617) 456-8100


Haran C. Rashes
(Motion for *pro hack vice* to be filed)
Senior Counsel for Regulatory Affairs
ExteNet Systems, Inc.
3030 Warrenville Road, Suite 340
Lisle, IL 60532
(630) 245-2064 – Office
(734) 660-9283 – Mobile
hrashes@extenetsystems.com

Date:  August 28, 2019